UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ESTHER NICOPHENE,

   Plaintiff,

v.                                                     Case No. 8:18-cv-02565-T-02AEP

HARTFORD INSURANCE COMPANY
OF THE SOUTHEAST,

   Defendant.
_____/

## ORDER

This matter comes to the Court on Plaintiff's Motion for Remand, Dkt. 9, and Defendant's Motion to Dismiss Count II of Complaint, Dkt. 5. Defendant has filed an opposition to the Motion to Remand. Dkt. 12. The Court hereby **DENIES** both motions. The Court further abates Count II pending resolution of Count I.

## BACKGROUND

According to Plaintiff, she sustained injuries in a 2017 motor vehicle accident with an at-fault underinsured motorist. Dkt. 9 ¶ 1. She sought recovery of insurance benefits from Defendant with whom she has underinsured/uninsured motorist coverage of up to $100,000. *Id.* ¶ 2; Dkt. 1-1 at 16.

On September 18, 2018, Plaintiff sued Defendant in the Circuit Court of the Thirteenth Judicial Circuit in Case No. 18-CA-009103. Dkt. 1-1. She pleaded an "Uninsured Motorist Claim" for refusing coverage (Count I) and a bad faith claim of violating Florida Statute, section 624.155 (Count II). *Id.* at 6-7. On October 18, 2018, Defendant filed a Notice of Removal in the Middle District of Florida pursuant to 28 U.S.C. § 1441. Dkt. 1. Defendant has also moved to dismiss Count II of Plaintiff's Complaint. Dkt. 5.

## DISCUSSION

Because there is diversity of parties and the amount in controversy exceeds $75,000, removal to federal court is appropriate. Secondly, while at this stage dismissal of Count II is unwarranted, the Court abates the bad faith claim pending resolution of Count I.

I. <u>The Court has jurisdiction over the matter.</u>

For the Court to possess original jurisdiction, the amount in controversy must exceed $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a).[1] Plaintiff challenges Defendant's removal as "Defendant's conclusory assertions regarding the amount in controversy are insufficient to meet their burden by a preponderance of the evidence that the amount in controversy is anything beyond

---

[1] There must also be diversity of parties. 28 U.S.C. § 1332(a). It is undisputed that Plaintiff is a citizen of Florida and Defendant is incorporated and has its principal place of business in Connecticut.

mere speculation" and that the "bad faith claim has not yet accrued and therefore, cannot be removed." Dkt. 9 ¶¶ 4-5.

The removing party has the burden of establishing that federal jurisdiction exists by a preponderance of the evidence. *Leonard v. Enter. Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002) (citation omitted). To resolve the issue, the "court considers the document received by the defendant from the plaintiff—be it the initial complaint or later received paper—and determines whether that document and the notice of removal unambiguously establish federal jurisdiction." *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1213 (11th Cir. 2007); *see also Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 946 (11th Cir. 2000) (finding that a court may consider evidence submitted after the removal petition is filed, "but only to establish the facts present at the time of removal"). Here, the relevant documents, which were included in the notice of removal and Defendant's Response to the Motion to Remand, all establish facts present at the time of removal.

Plaintiff's underlying Complaint does not specify an amount of damages,[2] though it does allege Plaintiff "was severely damaged and has suffered serious bodily injury and resulting pain and suffering, disability, loss of the capacity for

---

[2] The complaint does allege the damages exceed $15,000, Dkt. 1-1 at 5, which is merely the jurisdictional threshold for Florida circuit court, Fla. Stat. §§ 26.012, 34.01. This amount is not probative to any finding here. *See George v. Marriott Senior Living Servs., Inc.*, 01-8707-CIV-HURLEY, 2001 U.S. Dist. LEXIS 22822, at *2, 5 (S.D. Fla. Nov. 13, 2001) (finding that, for the purposes of removal, pleading a minimum jurisdictional amount is an unspecified demand for damages).

the enjoyment of life, expense of hospitalization, medical care and treatment, mental anguish, loss of earnings and loss of ability to earn money," and that the injuries "are either permanent or continuing in nature, and may include an aggravation of a pre-existing medical condition." Dkt. 1-1 at 7.

As an initial matter, the liability limit of Plaintiff's insurance policy (which exceeds $75,000) does not prove the amount in controversy. *See Martins v. Empire Indem. Ins. Co.*, No. 08-60004-CIV, 2008 WL 783762, at *2 (S.D. Fla. Mar. 21, 2008) ("In determining the amount in controversy in the insurance context, numerous courts have held that it is the value of the claim, not the value of the underlying policy, that determines the amount in controversy.") (quotation marks and citation omitted). Secondly, courts have found that little to no weight should be accorded to the amounts in proposed settlement offers.[3] *See, e.g., Bellezza v. LM Gen. Ins. Co.*, No. 8:18-cv-232-T-33JSS, 2018 WL 636750, at *1 (M.D. Fla. Jan. 31, 2018) (granting remand notwithstanding settlement demand in excess of jurisdictional threshold); *Standridge v. Wal-Mart Stores, Inc.*, 945 F. Supp. 252, 256 (N.D. Ga. 1996) (finding that a settlement demand letter "is nothing more than posturing by plaintiff's counsel for settlement purposes and cannot be considered a reliable indicator of the damages plaintiff is seeking").

---

[3] Interestingly, the parties seem to simultaneously argue both for and against reliance on settlement offers depending on whether the amount is below or above $75,000. *Compare* Dkt. 9 at 5, *and* Dkt. 12 at 3, *with* Dkt. 9 at 8, *and* Dkt. 12 at 8.

4

This is not to say that demand letters cannot include relevant information. On the contrary, the Court finds the medical opinions and cost estimates provided in Plaintiff's series of demand letters illuminating. The first such letter notes that "[b]ased on the nature and permanency of [Plaintiff's] injuries, future medical costs are conservatively estimated to be at least $5,000.00 to $6,000.00, per year. With her life expectancy of 18.3 years, the total future medical costs would be a minimum of $91,500.00. Further pain, suffering, mental anguish and loss of capacity for the enjoyment of life are very real damages, although it is very difficult to place a value on them. Just $100.00 per month for said damages based on his [sic] life expectancy would total $21,960.00." Dkt. 12-1 at 2. The second letter cites a doctor who "opined that the estimated cost of ongoing epidural injections can range from $15,000.00 to $20,000.00 a year and [Plaintiff] will require surgical intervention with estimated costs of $80,000.00 to $120,000.00" and that Plaintiff "has sustained permanent injury to her cervical spine." Dkt. 12-2 at 2. A third letter referenced a left shoulder arthrogram that revealed tearing of a tendon and muscle. Dkt. 12-4 at 1.

Plaintiff has also filed two Civil Remedy Notices of Insurer Violations (a "CRN"). The first, dated February 7, 2018, demanded $100,000, noting that an MRI revealed a central disc herniation at C4-5 with posterior spondylosis causing central spinal canal stenosis. Dkt. 12-5 at 3. The second, dated April 17, 2018,

5

observed that the case is "easily valued at above the policy limits because [Plaintiff] has already undergone two (2) series of injections due to her continued pain," and that, according to the abovementioned doctor, "the estimated cost of ongoing epidural injections can range from $15,000.00 to $20,000.00 a year and [Plaintiff] will require surgical intervention with estimated costs of $80,000.00 to $120,000.00." *Id.* at 8.

Unlike the numerical value of a settlement offer, courts have considered evidence of prior and future expenses in demand letters and CRNs to calculate the amount in controversy. *See, e.g., Kilmer v. Stryker Corp.*, No. 5:14-cv-456-Oc-34PRL, 2014 WL 5454385, at *4 (M. D. Fla. Oct. 27, 2014) (finding amount of controversy satisfied where a demand letter included medical expenses and references to a permanent injury and future medical care); *Black v. State Farm Mut. Auto. Ins. Co.*, No. 10-80996-CIV, 2010 WL 4340281, at *1-2 (S.D. Fla. Oct. 22, 2010) (amount satisfied where the plaintiff estimated her damages to exceed $100,000 in demand letter and a CRN).

Here, there is no indication that the pre-suit demands were inflated to induce settlement. *See Black*, 2010 WL 4340281, at *2. Rather, the medical opinions and estimated costs in the demand letters and CRNs provided a sufficient basis to support such amounts, and it is that basis which guides the Court's ruling. In her own documents, Plaintiff put forth evidence that the injuries she sustained—and

6

therefore the damages she seeks—will likely far exceed $75,000. In fact, the estimated cost of surgical intervention alone satisfies this. As such, no additional discovery on the matter is necessary.[4]

In sum, the Court finds that the amount in controversy requirement of § 1332 is satisfied. Because removal is proper, Plaintiff's request for attorney's fees and costs is denied.

II. <u>The bad faith claim is abated, not dismissed.</u>

Plaintiff's second cause of action is under Florida Statute, section 624.155 which prohibits, *inter alia*, an insurer from "[n]ot attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests." Fla. Stat. § 624.155(1)(b)(1).

Defendant argues that this claim "should be dismissed because it is premature and fails to state a valid claim or cause of action." Dkt. 5 at 2.[5] Indeed, in insurance cases, "coverage and liability issues must be determined before a bad

---

[4] Defendant lastly argues it is telling that Plaintiff has apparently refused to stipulate or admit that she is not seeking damages in excess of $75,000. *See Morock v. Chautauqua Airlines, Inc.*, No. 8:07-cv-210-T-17-MAP, 2007 WL 1725232, at *2 (M. D. Fla. June 14, 2007) (citation omitted). Because the demand letters and CRNs clearly satisfy the jurisdictional requirement, the Court does not address this point. It is also unnecessary to determine whether, as Plaintiff argues, Count II's lack of ripeness precludes removal.
[5] Based on the face of the document, Plaintiff purportedly filed its Motion to Dismiss in state court, arguing dismissal under Florida Rule of Civil Procedure 1.140(b). Dkt. 5 at 1. In a footnote, Defendant clarifies that "[i]n the event this suit is removed to Federal Court, Defendant is also asserting dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted." Defendant does not indicate how the analysis might differ, if at all. *Id.*

7

faith claim can be prosecuted." *Gen. Star Indem. Co. v. Anheuser-Busch Companies, Inc.*, 741 So. 2d 1259, 1260 (Fla. 5th DCA 1999) (citations omitted). This is because "if there is no insurance coverage, nor any loss or injury for which the insurer is contractually obligated to indemnify, the insurer cannot have acted in bad faith in refusing to settle the claim." *Hartford Ins. Co. v. Mainstream Const. Grp., Inc.*, 864 So. 2d 1270, 1272 (Fla. 5th DCA 2004).

The only question, then, is whether to abate the claim or dismiss it without prejudice. Citing the Supreme Court of Florida's preferences and increased judicial efficiency, many courts have abated unripe claims. *See, e.g., Dela Cruz v. Progressive Select Ins. Co.*, No. 8:14-cv-2717-T-30TGW, 2014 WL 6705414, at *1 (M.D. Fla. Nov. 26, 2014) (citing *Allstate Indem. Co. v. Ruiz*, 899 So.2d 1121, 1130 (Fla. 2005)); *O'Rourke v. Provident Life & Accident Ins. Co.*, 48 F. Supp. 2d 1383, 1384-85 (S.D. Fla. 1999); *Gianassi v. State Farm Mut. Auto. Ins. Co.*, No. 6:14-cv-1078-ORL-31, 2014 WL 4999443, at *3 (M.D. Fla. Oct. 7, 2014). Others have pointed out that the case-or-controversy requirement of Article III precludes federal courts from adjudicating cases that "rest[] upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *See, e.g., Ralston v. LM Gen. Ins. Co.*, No. 6:16-cv-1723-Orl-37DCI, 2016 WL 6623728, at *3 (M.D. Fla. Nov. 9, 2016) (quoting *Texas v. U.S.*, 523 U.S. 296, 300 (1998)); *Shvartsman v. GEICO Gen. Ins. Co.*, No. 6:17-cv-437-Orl-28KRS, 2017 WL

2734083, at *1 (M.D. Fla. June 23, 2017); *see also Bele v. 21st Century Centennial Ins. Co.*, 126 F. Supp. 3d 1293, 1296 (M.D. Fla. 2015) (dismissing an unripe bad faith claim under Rule 8(a)(2) of the Federal Rules of Civil Procedure). According to the latter courts, a finding of insurance coverage to serve as the basis for a bad faith claim is one such future event. *See, e.g., Ralston*, 2016 WL 6623728, at *3.

But there is arguably no actual "adjudication" because, at least in this case, the abated claim will lay dormant until Count I of the Complaint is resolved. *See, e.g.*, Black's Law Dictionary (10th ed. 2014) (defining adjudicate as "[t]o rule on judicially" and adjudication as "[t]he legal process of resolving a dispute; the process of judicially deciding a case"). Related, the concerns of the ripeness doctrine are not present here. *See Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1291 (11th Cir. 2010) ("The function of the ripeness doctrine is to protect[] federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes.") (quotation marks and citation omitted).

Defendant, moreover, does not specify why this particular case warrants dismissal, noting merely that "the decisions in *Lawton-Davis* and *Shvartsman* set forth better reasoning and show that the claim should be dismissed." Dkt. 5 at 2. And there is no showing of prejudice by having the claim abated instead of dismissed. In fact, keeping the two claims together is likely more efficient from the

perspective of Defendant as well as the judiciary. The Court thus abates Count II of the Complaint pending resolution of Count I.

## CONCLUSION

The Court **DENIES** both motions. Dkts. 5, 9. Count II of the Complaint is abated pending resolution of Count I. The case shall remain in the Middle District of Florida.

**DONE AND ORDERED** at Tampa, Florida, on December 11, 2018.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
All counsel of record